NO. COA13-1022

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

STATE OF NORTH CAROLINA

    v.

COREY DINAN

Onslow County
No. 10 CRS 52727

Appeal by defendant from judgments entered 8 March 2013 by Judge Jack W. Jenkins in Onslow County Superior Court. Heard in the Court of Appeals 17 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General David Gordon, for the State.*
>
> *James Goldsmith, Jr. for defendant.*

ELMORE, Judge.

Corey Dinan (defendant) appeals his convictions of intentional child abuse resulting in serious bodily injury under N.C. Gen. Stat. § 14-318.4(a3) and of assault on a child under the age of twelve in violation pursuant to N.C. Gen. Stat. § 14-33(c)(3). We hold that defendant received a trial free from error in part. Defendant's final issue is dismissed without prejudice and allows defendant the opportunity to file appropriate motions with the trial court.

## I. Factual Background

Abby[1], the victim in this case, is the biological daughter of defendant and Sarah F., defendant's now ex-wife. Abby was born 17 February 2010 and was approximately six-weeks-old at the time of the requisite child-abuse incident. At defendant's trial, Ms. F. testified that on 4 April 2010, defendant gave Abby her early-morning bottle. When Ms. F. woke, she went to the family room and saw Abby in her "princess swing" and defendant sitting "Indian style" on the floor. Abby was struggling to breathe. Ms. F. asked, "what's wrong with my baby?" Defendant responded, "I don't know. I don't know. She's been like that all morning." Ms. F. demanded that they take Abby to Onslow Memorial Hospital (Onslow). Abby was kept over-night at Onslow before being transferred to Pitt Memorial Hospital (now Vidant) for additional treatment.

Dr. Coral Steffey (Dr. Steffey), pediatrician and expert in the field of pediatrics and child abuse, testified that on 5 April 2010 she was called to Vidant to consult on Abby's condition. She testified that Abby was transferred from Onslow to Vidant for additional treatment after physicians discovered that Abby's oxygen saturations were low, that she was having

---

[1] Pseudonyms are used throughout the opinion to protect the identities of minors and other persons involved in this action.

difficulty breathing, that she was dehydrated, and that x-rays showed multiple rib fractures and a hemothorax. In fact, Abby had 24 identifiable rib fractures, both new and healing. X-rays taken of Abby's ribs 17 days prior did not reveal any rib fractures. Accordingly, Dr. Steffey opined that between 18 March and 4 April 2010, someone injured Abby on at least two occasions to the point that she sustained multiple rib fractures. Dr. Steffey read the opinion from her medical report into the record, as follows: "There is no medical explanation for Abby's constellation of injuries, which include healing and acute rib fractures with hemothorax, intra-cranial hemorrhage, subconjunctival hemorrhages and bruising to her ankle. No history of trauma has been provided to explain Abby's injuries. The constellation of inexplicable injuries is consistent with a diagnosis of child physical abuse with inflicted injuries, on more than one occasion."

Elizabeth Pogroszewski, social worker for Onslow County Department of Social Services, testified that on 4 April 2010 she asked defendant his opinion as to what contributed to Abby's injuries. He responded, "[I] must have held her too tight." Additionally, four officers with the Jacksonville Police Department testified at trial. Officer Timothy Sawyer testified

that defendant made a written statement in which he admitted to holding Abby too tight. Detective Anthony Ramirez testified that defendant demonstrated for him how he picked up Abby and held her with his elbows locked. Detective Trudy Allen testified that when she asked defendant how Abby was injured, he made "a shaking motion, just as if he would shake up the contents of a canister." At that point, she arrested defendant for felony child abuse. Officer Jason Lagana testified that defendant made the following spontaneous statement to him: "I guess you get charged for holding your kid too tight."

At trial, defendant sought to exclude the testimony of Brent Cross, defendant's friend and fellow Marine, and Megan Dinan, defendant's former ex-wife. After *voir dire*, the trial court denied defendant's motions *in limine*, finding that the proffered testimony was relevant as it went to the issue of "knowledge, absence of mistake and intent." Further, the trial court found that the probative value of the 404(b) testimony was not substantially outweighed by its prejudicial effect.

Brent Cross testified that in 2006 he was helping defendant with a home-improvement project when defendant's then wife, Megan Dinan, left the couple's napping infant son in defendant's care. When the baby woke crying, Mr. Cross testified that

defendant became "agitated." Defendant went to the baby's room and, through the monitor, told Mr. Cross, "I got the baby now. You can go ahead and shut the baby monitor off. I got it." Mr. Cross had an "instinct" to keep the monitor on. When the baby was picked up, Mr. Cross testified that he heard the baby's cry become "hysterical" and he heard defendant's tone change from "upset" to "just anger."

Megan Dinan testified that she and defendant had two biological sons together, Ian and Sam. However, after divorcing, defendant relinquished his parental rights. She testified that when Ian was approximately eight-weeks old, he woke one morning with "one tiny little bruise" on his chest. Defendant was responsible for feeding Ian during the night. The following morning, Ian woke "covered in bruises, head to toe. He was so bruised that his earlobes were bruised." Ian was hospitalized and diagnosed as having a virus, which doctors thought could account for his severe bruising. After Ian was released from the hospital, Ms. Dinan noted subsequent bruising in the shape of finger prints on Ian. Ms. Dinan testified that when she confronted defendant, he responded, "it is my handprint, [] I was holding him last night and I think I held him too tight."

Defendant testified on his own behalf at trial. He alleged that he never "mistreated" Abby on 4 April 2010 or any time prior. He admitted to accidentally treating her like a one-year old instead of a six-week old. After the defense rested, the jury found defendant guilty of intentional child abuse resulting in serious bodily injury and of assault on a child under the age of twelve. The trial court sentenced defendant on 8 March 2013 to a term of 73 months to 97 months imprisonment, plus 60 days.

## II.  **Analysis**

### A. **Rule Violation**

Initially, we direct defense counsel's attention to Rule 28 of the North Carolina Rules of Appellate Procedure. Rule 28(b)(4) requires counsel to include "a statement of the grounds for appellate review. Such statement shall include citation of the statute or statutes permitting appellate review." N.C.R. App. P. 28(b)(4). In his brief, defense counsel provides:

> This Court is called upon to determine whether [defendant] was deprived of his fundamental right to a fair trial where evidence of uncharged prior bad acts were introduced to establish criminal propensity, and where the trial court failed to make a determination that the probative value outweighed any prejudice. . . .  Further, this Court is called upon to determine whether [defendant] received ineffective assistance of counsel[.]

Defense counsel has violated Rule 28(b)(4). The above "statement" fails to reference any statute which would allow for appellate review—defense counsel has merely reiterated the issues he raises on appeal. Here, defense counsel is licensed in Florida. Nevertheless, we urge defense counsel and all counsel to be mindful of our Rules of Appellate Procedure.

Defendant first argues that the trial court erred in admitting testimony relating to his "uncharged prior bad acts" under Rule 404(b). We are unable to address the merits of this issue because defendant offers no clear or reasoned argument in support of his position as required by Rule 28(b)(6). *See* N.C.R. App. P. 28(b)(6). Specifically, in defendant's first issue he fails to direct us to the testimony that he argues it was error for the trial court to admit. We assume that defendant challenges the testimony of Mr. Cross and Ms. Dinan pursuant to Rules 404(b) and 403, as these witnesses are referenced in this issue. Further, defendant's argument is presented in a nonsensical manner. At the very least, defendant is required to direct us to the challenged testimony—it is not this Court's duty to craft defendant's argument for him. Accordingly, defendant's first argument is abandoned on appeal pursuant to Rule 28(b)(6).

## B. Admission of 404(b) Evidence

Alternatively, based on defendant's recitation of the facts and a review of the transcript, we assume *arguendo* that in his first issue, defendant is objecting to the admission of the unfavorable character evidence offered by Mr. Cross and Ms. Dinan. Nevertheless, we remain unable to address the merits as defendant has failed to preserve this issue for our review.

"[T]o preserve for appellate review a trial court's decision to admit testimony, objections to [that] testimony must be contemporaneous with the time such testimony is offered into evidence and not made only during a hearing out of the jury's presence prior to the actual introduction of the testimony." *State v. Ray*, 364 N.C. 272, 277, 697 S.E.2d 319, 322 (2010) (citations and quotations marks omitted). At trial, defendant did not object to the admission of what we believe constitutes the challenged testimony of Mr. Cross and Ms. Dinan. Therefore, he did not preserve the issue of the admissibility of this testimony for our review. *Id*.

Failure to properly preserve an argument restricts this Court's review on appeal to plain error. However, Rule 10(a)(4) states that such review is only available "when the judicial action questioned is specifically and distinctly contended to

amount to plain error." N.C.R. App. P. 10(a)(4). In his brief, defendant does not ask this Court to review the issue under the plain error standard. When the State noted defendant's failure to argue plain error in the State's brief, defendant attempted to cure this deficiency by mentioning plain error in defendant's reply brief. However, a reply brief is not an avenue to correct the deficiencies contained in the original brief. *See* N.C.R. App. P. 28(b)(6); *see also State v. Davis*, 202 N.C. App. 490, 497, 688 S.E.2d 829, 834 (2010) ("[B]ecause [d]efendant did not 'specifically and distinctly' allege plain error as required by [our appellate rules], [d]efendant is not entitled to plain error review of this issue.").

## C. Scope of Prosecutor's Cross-Examination

Defendant next contends that the prosecutor's improper cross-examination deprived him of a fair trial. We are not persuaded that the prosecutor questioned defendant in an unreasonable manner.

Generally, "[t]he scope of cross-examination . . . is within the sound discretion of the trial court, and its ruling thereon will not be disturbed absent a showing of abuse of discretion." *State v. Herring*, 322 N.C. 733, 743, 370 S.E.2d 363, 370 (1988) (citation omitted). However, here defendant

argues that we should review this issue under the plain error standard of review. We agree. As such, defendant "must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jurys finding that the defendant was guilty." *Id.* (citation and quotation omitted).

In the instant case, defendant takes issue with the prosecutor's line of questioning in three specific instances[2]. First, he contends that the prosecutor inappropriately tried to "place him at odds" with Sarah F. by asking, "[y]ou don't believe Sarah caused these injuries at all, do you?" and "[d]o you believe that Sarah F. caused these injuries to Abby?" Second, defendant argues that it was error for the prosecutor to "challenge[] defendant to call [Detective Allen] a liar[.]" We assume that defendant is referencing the following question: "So Detective Allen, then, is lying about you [showing her how you shook Abby]?" Defendant replied, "I wouldn't say lie, just changing facts about who said what." Third, defendant argues

---

[2] Defendant also argues that the prosecutor improperly questioned Megan Dinan. However, we cannot address the merits of this argument as counsel's argument lacks sufficient specificity.

that it was inappropriate for the prosecutor to ask, "how long are you going to wait with that infant before you begin holding him or her too tightly?" However, as to this last question, the record shows that the trial judge sustained defense counsel's objection to the question and instructed the jury to disregard it. In addition, the prosecutor withdrew the question. Thus, defendant's argument as to this question is moot.

Further, defendant makes no argument as to how he was prejudiced by these questions; he merely contends that he was "highly prejudiced by this impossible questioning[.]" Without a showing of prejudice, defendant cannot establish that any alleged error was a fundamental error. *See State v. Cummings*, 352 N.C. 600, 637, 536 S.E.2d 36, 61 (2000), *cert. denied*, 532 U.S. 997, 121 S. Ct. 1660, 149 L. Ed. 2d 641 (2001) ("[An] empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule."). Therefore, defendant's argument must be overruled. Assuming *arguendo* that defendant made a showing of prejudice, defendant has not convinced this Court that absent the prosecutor's questions, the jury probably would have reached a different verdict. The record contains additional evidence of defendant's guilt.

D. **Ineffective Assistance of Counsel**

Lastly, defendant contends that defense counsel was ineffective because he 1) completely misapprehended the law with respect to the element of "intent," 2) elicited damaging testimony from the State's witnesses and defendant, and 3) permitted "prosecutorial misconduct" by failing to object to the prosecutor's questions. Given our conclusion in section "C," defendant's third contention moot. We dismiss defendant's remaining arguments without prejudice to defendant's right to file appropriate motions in the trial court.

When raising claims of ineffective assistance of counsel, the "accepted practice" is to bring these claims in post-conviction proceedings, rather than on direct appeal. *State v. Dockery*, 78 N.C. App. 190, 192, 336 S.E.2d 719, 721 (1985). Here, defendant has "prematurely asserted his ineffective assistance of counsel claim" by directly appealing to this Court. *State v. Stroud*, 147 N.C. App. 549, 556, 557 S.E.2d 544, 548 (2001) (quotation and citation omitted).

Defendant raises potential questions regarding defense counsel's trial strategy. However, it is unclear from defendant's brief what specific conduct he challenges as being ineffective. As such, we are unable to address the merits of

defendant's argument. To best resolve this issue, an evidentiary hearing available through a motion for appropriate relief is our suggested mechanism. *Id.; see also State v. Ware*, 125 N.C. App. 695, 697, 482 S.E.2d 14, 16 (1997) (dismissing the defendant's appeal where the issues could not be determined from the record and concluding that "[t]o properly advance these arguments, defendant must move for appropriate relief pursuant to G.S. 15A–1415[ ] and G.S. 15A-1420[ ]"). "Upon the filing of a motion for appropriate relief, the trial court will determine the motion and make appropriate findings of fact." *Ware*, 125 N.C. App. at 697, 482 S.E.2d at 16.

### III. Conclusion

In sum, we deem defendant's first issue abandoned on appeal. Assuming *arguendo* that it is not abandoned, defendant failed to properly preserve it for our review. We overrule defendant's second issue that he was prejudiced by the prosecutor's line of questioning. Finally, defendant's ineffective assistance of counsel claim is dismissed without prejudice so that he may file appropriate motions in the trial court.

No error in part; dismissed in part.

Chief Judge MARTIN and HUNTER, Robert N., concur.