ZACHARY, Judge.
 

 *590
 
 Defendant Gregory Charles Baskins appeals from the trial court's order denying his Motion for Appropriate Relief. We reverse.
 

 Background
 

 Defendant was charged with conspiracy to traffic in heroin, trafficking by possession of 28 grams or more of heroin, and trafficking by transportation of 28 grams or more of heroin. Defendant filed a Motion to Suppress the evidence on the grounds that the initial seizure that resulted in the inculpatory search was unlawful. The trial court denied Defendant's Motion to Suppress, which this Court affirmed in
 
 State v. Baskins
 
 , No. COA15-1137,
 
 2016 WL 1743400
 
 , 2016 N.C. App. LEXIS 465 ("
 
 Baskins I
 
 "). Defendant thereafter filed a Motion for Appropriate Relief arguing that he received ineffective assistance of appellate counsel in
 
 Baskins I
 
 . The trial court denied Defendant's Motion for Appropriate Relief. Defendant appeals.
 

 I. The Seizure
 

 The evidence presented at the hearing on Defendant's Motion to Suppress tended to show that, on 6 October 2014, Defendant and his traveling companion Tomekia Bone arrived in Greensboro from New York at 6:30 a.m. on the China Bus. At the time of Defendant's arrival, Detective M.R. McPhatter of the Greensboro Police Department was conducting surveillance of the China Bus stop as part of an interdiction team. Detective McPhatter was surveilling the China Bus stop because he "was aware the China Bus was a known method for individuals to transport narcotics because, among other reasons, there was little screening of passengers or their baggage."
 

 Detective McPhatter observed Defendant and Ms. Bone exit the China Bus carrying small bags. According to Detective McPhatter, he "was aware that individuals who transport narcotics often travel on short, up and back trips to New York and, therefore, travel with only small bags."
 

 While Detective McPhatter watched, Defendant and Ms. Bone went inside the Shell station where Detective McPhatter was parked in an unmarked vehicle. Defendant exited the Shell station after a few minutes and looked toward Detective McPhatter's vehicle. "Defendant then gestured at the vehicle as if to [wave] it off and walked back to
 
 *386
 
 the door of the Shell station." Detective McPhatter was not sure whether Defendant was trying to determine whether the unmarked vehicle was his ride, or
 
 *591
 
 whether Defendant was trying to determine if a police officer was inside the car. Detective McPhatter radioed the other officers on the interdiction team concerning the occurrence. Shortly thereafter, a Buick pulled into the Shell station and picked up Defendant and Ms. Bone.
 

 Detective McPhatter testified that he ran the Buick's registration on the laptop in his vehicle and learned that the Buick had an expired registration and an inspection violation. However, Detective McPhatter feared that his identity may have been compromised, so he relayed that information to the other detectives and asked them to follow the Buick.
 

 Detective M.P. O'Hal began following the Buick. Detective O'Hal also ran the Buick's tag information and testified that he learned the Buick had an expired registration and an inspection violation. Detective O'Hal testified that at that point he made the decision to stop the Buick. Detective O'Hal approached the vehicle and began conversing with the driver. During that time, Detective O'Hal noticed that Defendant and Ms. Bone appeared very anxious and were sweating heavily.
 

 Detective O'Hal asked the driver for his permission to search the vehicle. The driver consented and the detectives discovered heroin.
 

 II. Motion to Suppress
 

 At the hearing on Defendant's Motion to Suppress, the focus was on the validity of the initial stop of the Buick. At issue was the fact that when the State introduced the DMV information upon which the detectives relied when making the decision to stop the Buick, the DMV information revealed that the Buick's registration was still valid. While technically expired, the DMV printout indicated that the registration was still valid through 15 October 2014:
 

 PLT STATUS: EXPIRED
 

 ISSUE DT: 09262013 VALID THROUGH 10152014
 

 Indeed, the driver was operating the Buick during the fifteen-day grace period within which the vehicle could be lawfully operated pursuant to
 
 N.C. Gen. Stat. § 20-66.1
 
 . Detective O'Hal testified that he knew there was a fifteen-day grace period following expiration of a vehicle's registration during which the expired registration remained valid. However, Detective O'Hal explained that he stopped reading the DMV printout when he read that the registration was expired, and therefore he did not learn that it was still valid.
 

 *592
 
 Further, while Detective O'Hal testified that he had also stopped the Buick for an inspection violation, the DMV printout contained no information concerning the status of the Buick's inspection.
 

 Nevertheless, in its order denying Defendant's Motion to Suppress, the trial court found that the detectives "ran the license tag information for the Red Buick ... and ... determined that the car had an expired registration and an inspection violation[,]" and that "[t]he stop was initiated because of the expired registration and the inspection violation." The trial court then denied Defendant's Motion to Suppress based upon the following pertinent conclusions of law:
 

 1. The ... registration on the Buick had expired at the time of the stop. North Carolina General Statutes gives officers the authority to issue a citation where probabl[e] cause exists to believe there has been a violation of Chapt. 20 of the General Statutes. N.C.G.S. § 15A-302. Where probable cause exists that a Chapt. 20 violation exists, an officer may stop the vehicle to issue a violation or a warning.
 

 2. The officers had probabl[e] cause to stop the Buick based on the information received from the DMV search that the vehicle's registration had expired and that an inspection violation had occurred. If the officers were mistaken as to whether or not a Chapt. 20 violation existed at the time of the stop, such was a reasonable mistake of law that did not render the stop invalid.
 
 Heien v. North Carolina
 
 , --- U.S. ----,
 
 135 S.Ct. 530
 
 [
 
 190 L.Ed.2d 475
 
 ] (2014).
 

 3. Considering the totality of the circumstances, Det. O'Hal had reasonable suspicion
 
 *387
 
 that criminal activity related to narcotics was afoot when he stopped the Buick, based on the information received from Det. Mc[Ph]atter and his own experience with the circumstances[.]"
 

 Defendant thereafter entered an
 
 Alford
 
 plea
 
 [1]
 
 to all charges but preserved his right to appeal the denial of his Motion to Suppress.
 

 III.
 
 Baskins I
 

 While the trial court concluded that the initial seizure of the Buick was justified based on (1) the Buick's inspection violation, (2) the
 
 *593
 
 Buick's expired registration, and (3) Detective O'Hal's "reasonable suspicion that criminal activity related to narcotics was afoot[,]" Defendant's counsel on appeal in
 
 Baskins I
 
 challenged only the latter two justifications. Appellate counsel did not challenge any of the trial court's findings of fact. In particular, appellate counsel did not challenge the trial court's findings of fact that the detectives learned of the inspection violation when they ran the Buick's tag information. Thus, despite Defendant's arguments challenging the lack of reasonable suspicion and the reasonableness of the mistake concerning the Buick's registration status, this Court concluded that, "[b]ecause Defendant did not challenge the trial court's findings of fact, we must disagree."
 
 Baskins I
 
 ,
 
 2016 WL 1743400
 
 , at *3, 2016 N.C. App. LEXIS 465, at *7. We explained:
 

 As the State correctly points out, Defendant "does not challenge the trial court's findings as to the inspection violation." In fact, Defendant does not specifically challenge any of the trial court's findings of fact, and Defendant does not address the alleged inspection violation in his brief to this Court. In response to the State's brief, Defendant filed a reply brief in which he argues that there was no evidence presented at the suppression hearing indicating that Detective O'Hal could have known the inspection was expired. Though Defendant's argument in his reply brief might have merit, Defendant cannot use a reply brief to introduce new arguments on appeal.
 
 State v. Dinan
 
 ,
 
 233 N.C. App. 694
 
 , 698,
 
 757 S.E.2d 481
 
 , 485,
 
 disc. review denied
 
 ,
 
 367 N.C. 522
 
 ,
 
 762 S.E.2d 203
 
 (2014) (citation omitted) ("[A] reply brief is not an avenue to correct the deficiencies contained in the original brief.
 
 See
 
 N.C.R. App. P. 28(b)(6) [.]"). Further, even in his reply brief, Defendant failed to challenge the following findings of fact:
 

 5. Det. McPhatter ran the registration for the ... Buick on the laptop in his vehicle and learned that the Buick had an expired registration and an inspection violation. He communicated this information to other, assisting detectives and, because he was concerned that his identity had been compromised, he asked other detectives to follow the ... Buick so he could stay back a distance.
 

 ...
 

 *594
 
 8. Det. O'Hal also ran the license tag information for the ... Buick relayed by Det. McPhatter and also determined that the [Buick] had an expired registration and an inspection violation.
 

 ...
 

 10. The stop was initiated because of the expired registration and the inspection violation.
 

 Because Defendant does not challenge these findings of fact, they are binding on appeal. [
 
 State v.
 
 ]
 
 White
 
 , 232 N.C. App. [296] at 301, 753 S.E.2d [698] at 701 [ (2014) ].
 

 Driving a vehicle without the required up-to-date inspection is an infraction in North Carolina. N.C. Gen. Sat. § 20-183.8(a)(1) (2015). "A law enforcement officer who has probable cause to believe a person has committed an infraction may detain the person for a reasonable period in order to issue and serve him a citation." N.C. Gen. Stat. § 15A-1113(b) (2015). Based upon the trial court's unchallenged findings of fact, Detective O'Hal determined that the Buick was being operated with an expired inspection, and Detective
 
 *388
 
 O'Hal initiated the stop of the Buick, in part, on that basis. These findings of fact are sufficient to support the trial court's conclusion that Detective O'Hal "had [probable] cause to stop the Buick based on the information received from the DMV search that an inspection violation had occurred." This argument is without merit.
 

 Baskins I
 
 ,
 
 2016 WL 1743400
 
 , at *3-4, 2016 N.C. App. LEXIS 465, at *7-10 (alterations omitted) (footnote omitted). Accordingly, without having to address Defendant's subsequent arguments, this Court affirmed "the denial of Defendant's motion to suppress based solely upon the trial court's [unchallenged] determination that an inspection violation justified the initial stop of the Buick."
 
 Id.
 
 at *4, 2016 N.C. App. LEXIS 465, at *10.
 

 IV. Motion for Appropriate Relief
 

 According to Defendant, "[t]here was no evidence to support the finding of fact that the officer was aware of an inspection violation at the time of the stop." Defendant therefore filed a Motion for Appropriate Relief with the trial court on 5 June 2017 in which he alleged that he "received ineffective assistance of counsel" in
 
 Baskins I
 
 "when appellate counsel failed to challenge the trial court's findings of fact in its
 
 *595
 
 order denying his Motion to Suppress." In support of this contention, Defendant noted that appellate counsel
 
 did
 
 challenge the findings of fact concerning the inspection violation in her reply brief "upon reading the State's response brief, which relied on the inspection violation as the basis for the stop." Defendant also attached as an exhibit the affidavit of appellate counsel in which she averred that
 

 I did not make a strategic decision not to challenge the findings of fact related to the DMV printout in the appellate brief. I did not raise this issue because I did not notice it when I reviewed the record. If I had noticed this issue before filing the brief, I would have raised it at the appropriate time.
 

 Defendant argued that had his appellate counsel "properly challenged the trial court's findings of fact," this Court "would have reversed the trial court's denial of the motion [to suppress] and vacated [Defendant's] convictions because the officer did not have a reasonable suspicion for the traffic stop." Accordingly, based on the facts already in the record, Defendant asked the trial court to adjudicate his Motion for Appropriate Relief for ineffective assistance of counsel "on the merits of the pleadings" and attachments, or in the alternative, to "order the State to file a response and schedule a hearing for the purpose of taking evidence and hearing the arguments of counsel[.]"
 

 The trial court concluded by order entered 29 August 2017 that Defendant's Motion for Appropriate Relief on the grounds of ineffective assistance of counsel could "be resolved without an evidentiary hearing" and that it "present[ed] only legal issues[.]" The trial court determined that Defendant's Motion for Appropriate Relief ultimately asked the trial court to "reverse the order denying the Defendant's Motion to Suppress ... and vacate Defendant's convictions." To that point, the trial court cited "the well established rule in North Carolina ... that one Superior Court judge ... may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action."
 
 N.C. Nat'l Bank v. Va. Carolina Builders
 
 ,
 
 307 N.C. 563
 
 , 566,
 
 299 S.E.2d 629
 
 , 631 (1983) (alteration omitted) (citation omitted). The trial court regarded Defendant's Motion for Appropriate Relief as "asking th[e] Court ... to overrule another Superior Court judge," and therefore concluded that Defendant's Motion for Appropriate Relief for ineffective assistance of appellate counsel was "meritless and should be denied."
 

 Defendant filed a Petition for Writ of Certiorari asking this Court to review the trial court's order denying his Motion for Appropriate Relief.
 

 *596
 
 This Court allowed Defendant's Petition for Writ of Certiorari by order entered 9 October 2017.
 

 Discussion
 

 Defendant argues (1) that the trial court erred in denying his Motion for Appropriate Relief based on the incorrect conclusion that it did not have the authority to do otherwise, and (2) that the trial court erred in denying his Motion for Appropriate Relief because Defendant made a proper showing of ineffective
 
 *389
 
 assistance of appellate counsel. We agree.
 

 I. Ineffective Assistance of Appellate Counsel
 

 The right to counsel guaranteed by Article I, Section 23 of the North Carolina Constitution and the Sixth Amendment to the United States Constitution "includes the right to the effective assistance of counsel."
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 561,
 
 324 S.E.2d 241
 
 , 247 (1985) (citing
 
 McMann v. Richardson
 
 ,
 
 397 U.S. 759
 
 , 771,
 
 90 S.Ct. 1441
 
 , 1449,
 
 25 L.Ed.2d 763
 
 , 773 (1970) ). The Fourteenth Amendment further requires that defendants be afforded effective assistance of
 
 appellate
 
 counsel.
 
 Evitts v. Lucey
 
 ,
 
 469 U.S. 387
 
 , 396,
 
 105 S.Ct. 830
 
 , 836,
 
 83 L.Ed.2d 821
 
 , 830 (1985) ;
 
 Smith v. Robbins
 
 ,
 
 528 U.S. 259
 
 , 279,
 
 120 S.Ct. 746
 
 , 760-61,
 
 145 L.Ed.2d 756
 
 , 776 (2000).
 

 The burden is on the defendant to demonstrate that he received ineffective assistance of counsel "so ... as to require reversal of [the defendant's] conviction[.]"
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 , 693 (1984). In order to satisfy that burden, the defendant must establish both of the elements of a claim for ineffective assistance of counsel:
 

 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 

 Id.
 

 (emphasis omitted);
 
 accord
 

 Braswell
 
 ,
 
 312 N.C. at 562
 
 ,
 
 324 S.E.2d at 248
 
 (adopting the test laid out in
 
 Strickland
 
 ). "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable."
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 . The same standard applies to claims of ineffective assistance of appellate counsel.
 

 *597
 

 State v. Simpson
 
 ,
 
 176 N.C. App. 719
 
 , 722,
 
 627 S.E.2d 271
 
 , 275,
 
 disc. review denied
 
 ,
 
 360 N.C. 653
 
 ,
 
 637 S.E.2d 191
 
 (2006) (citing
 
 Robbins
 
 ,
 
 528 U.S. at 285
 
 ,
 
 120 S.Ct. at 764
 
 ,
 
 145 L.Ed.2d at
 
 780 ).
 

 II. Superior Court Judge's Authority on a Motion for Appropriate Relief
 

 In his Motion for Appropriate Relief, Defendant argued that his
 

 appellate counsel fell below an objective standard of professional reasonableness by failing to challenge the trial court's findings of fact in its order denying the motion to suppress, which resulted from her failure to identify the issue in her review of the record. [Defendant] was prejudiced by this error. There was no competent evidence that the officers had reasonable suspicion to believe that a traffic law was being broken at the time of the stop. If appellate counsel had raised this issue by challenging the findings of fact in [Defendant's] case the Court of Appeals would have reversed the order denying the Motion to Suppress and vacated [Defendant's] convictions.
 

 Nevertheless, the trial court denied Defendant's Motion for Appropriate Relief on the grounds that the ineffective assistance of counsel analysis would require the trial court to overrule the earlier superior court judge's order denying Defendant's Motion to Suppress. The trial court concluded that because it did not have the authority to do so, Defendant's Motion for Appropriate Relief must be denied.
 

 The rule that "one superior court judge may not reconsider an order entered by another superior court judge,"
 
 State v. Woolridge
 
 ,
 
 357 N.C. 544
 
 , 545,
 
 592 S.E.2d 191
 
 , 191 (2003), is premised upon the fact that "[t]he power of one judge of the superior court is equal to and coordinate with that of another[.]"
 
 Michigan Nat'l Bank v. Hanner
 
 ,
 
 268 N.C. 668
 
 , 670,
 
 151 S.E.2d 579
 
 , 580 (1966). "[I]t is well established in our jurisprudence that ... ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action."
 
 Woolridge
 
 ,
 
 357 N.C. at 549
 
 ,
 
 592 S.E.2d at 194
 
 (citation and quotation
 
 *390
 
 marks omitted). However, this rule is generally inapplicable where a judge is tasked with deciding the merits of a defendant's motion for appropriate relief.
 

 Pursuant to N.C. Gen. Stat. § 15A-1415(a) and (b), a defendant may file a motion for appropriate relief at any time after the verdict on the grounds that "[t]he conviction was obtained in violation of the Constitution of the United States or the Constitution of North Carolina."
 

 *598
 
 N.C. Gen. Stat. § 15A-1415(b)(3) (2017). Because effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Constitution,
 
 Evitts,
 

 469 U.S. at 396
 
 ,
 
 105 S.Ct. at 836
 
 ,
 
 83 L.Ed.2d at 830
 
 , a defendant may "allege[ ] ineffective assistance of ... appellate counsel as a ground for the illegality of his conviction" under N.C. Gen. Stat. § 15A-1415(b)(3). N.C. Gen. Stat. § 15A-1415(e) (2017). N.C. Gen. Stat. § 15A-1413 specifically provides that such motions are to be heard and determined by any superior court judge "empowered to act in criminal matters[.]" N.C. Gen. Stat. § 15A-1413(a) (2017). Our Supreme Court has likewise made clear that it is the duty of the trial judge-when faced with a motion for appropriate relief based on a claim of ineffective assistance of appellate counsel-to "fully address" whether the "defendant's appellate counsel's performance was deficient," and if so, "whether counsel's performance prejudiced [the] defendant."
 
 State v. Todd
 
 ,
 
 369 N.C. 707
 
 , 712,
 
 799 S.E.2d 834
 
 , 838 (2017). Such a situation presents the superior court judge with the task of determining a new issue that has yet to be decided.
 
 Cf.
 

 Va. Carolina Builders
 
 ,
 
 307 N.C. at 567
 
 ,
 
 299 S.E.2d at 631
 
 .
 

 As explained in subsection
 
 ii
 
 below, while the prejudice prong of an ineffective assistance of appellate counsel claim may implicate prior orders at the trial level, such implications are ancillary to the underlying claim of ineffective assistance of counsel. Indeed, N.C. Gen. Stat. § 15A-1415 explicitly authorizes such collateral action by a superior court judge.
 
 E.g.
 
 , N.C. Gen. Stat. § 15A-1415 (official commentary) ("The Motion for appropriate relief ... is a device which may be used for any additional matters which relate to the original case[,]" such as "the question of whether or not ... probation has been unlawfully revoked."). Not only are superior court judges statutorily authorized to do so, but superior court judges routinely perform such collateral reviews upon a defendant's motion for appropriate relief, with the sanction of our appellate courts. This is the case even though such a review may implicate an earlier superior court judge's actions or determinations.
 
 See, e.g.
 
 ,
 
 Vester v. Stephenson
 
 ,
 
 465 F.Supp. 868
 
 , 870 (E.D.N.C. 1978) (allowing the petitioner to proceed with his claims, including ineffective assistance of counsel, noting that, among other things, "collateral attacks [are] proper under Section 1415");
 
 State v. Spruiell
 
 , --- N.C. App. ----, ----,
 
 798 S.E.2d 802
 
 , 806 (2017) ("In the MAR order, the trial court concluded that, under the factual circumstances of [the] [d]efendant's case, it was improper for the trial court to instruct the jury on felony murder.");
 
 State v. Wilkerson
 
 ,
 
 232 N.C. App. 482
 
 , 491,
 
 753 S.E.2d 829
 
 , 836 (2014) ("[T]he trial court clearly had jurisdiction to reach the merits of [the] [d]efendant's challenge to Judge Gore's original judgments pursuant to N.C. Gen. Stat. § 15A-1415(b)(4) and (b)(8).");
 

 *599
 

 Edmondson v. State
 
 ,
 
 33 N.C. App. 746
 
 , 749,
 
 236 S.E.2d 397
 
 , 399 (1977),
 
 overruled on other grounds
 
 ,
 
 State v. Dickens
 
 ,
 
 299 N.C. 76
 
 , 84,
 
 261 S.E.2d 183
 
 , 188 (1980) (answering in the negative the question of "whether an adjudication by a trial judge that a plea of guilty is voluntarily made bars a criminal defendant from collaterally attacking that plea in a post conviction hearing").
 

 Accordingly, the superior court judge in the instant case acted under a misapprehension of the law when he denied Defendant's Motion for Appropriate Relief on the grounds that it would impermissibly require him to "overrule another Superior Court judge[.]"
 

 III. Merits of Defendant's Motion for Appropriate Relief
 

 The State argues that "[e]ven assuming the trial court erred in its rationale, it did not err by ultimately denying Defendant's MAR" because "Defendant failed to show ineffective assistance of appellate counsel." On the other hand, Defendant argues that he made a proper
 
 *391
 
 showing of ineffective assistance of appellate counsel, and that the trial court was required to grant his Motion for Appropriate Relief. Thus, Defendant maintains that the "MAR court's order must be reversed[,]" and that "[t]his Court should vacate [his] convictions since he was denied effective assistance of appellate counsel." We agree with Defendant.
 

 In the instant case, Defendant properly asserted his claim of ineffective assistance of appellate counsel through a motion for appropriate relief in the trial court.
 
 See
 

 State v. Stroud
 
 ,
 
 147 N.C. App. 549
 
 , 553,
 
 557 S.E.2d 544
 
 , 547 (2001),
 
 cert. denied
 
 ,
 
 356 N.C. 623
 
 ,
 
 575 S.E.2d 758
 
 (2002) ("In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal."). The order denying Defendant's Motion for Appropriate Relief is devoid of findings relating to any deficiency in appellate counsel's performance, possibly as a result of the trial court's conclusion that it could not overrule the prior judge. Nevertheless, it is appropriate for an appellate court to reach the merits of a claim of ineffective assistance of appellate counsel on direct review "when the cold record reveals that no further investigation is required,
 
 i.e.
 
 , claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."
 
 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 166,
 
 557 S.E.2d 500
 
 , 524 (2001) (citing
 
 State v. Blakeney
 
 ,
 
 352 N.C. 287
 
 , 308-09,
 
 531 S.E.2d 799
 
 , 815-16 (2000) and
 
 State v. House
 
 ,
 
 340 N.C. 187
 
 , 196-97,
 
 456 S.E.2d 292
 
 , 297 (1995) ).
 

 Here, we agree with the trial court that Defendant's Motion for Appropriate Relief on the grounds of ineffective assistance of counsel "may be resolved without an evidentiary hearing." For the reasons
 
 *600
 
 explained below, we are able to "discern from the record before us whether" appellate counsel's performance was deficient in
 
 Baskins I
 
 and whether Defendant was prejudiced thereby.
 
 State v. Edgar
 
 ,
 
 242 N.C. App. 624
 
 , 632,
 
 777 S.E.2d 766
 
 , 771 (2015). We therefore proceed to the parties' arguments on the merits of Defendant's ineffective assistance of counsel claim.
 
 [2]
 

 i.
 
 Deficient Performance
 

 In order to establish the first prong of an ineffective assistance of counsel claim, the defendant must show "that his counsel's conduct fell below an objective standard of reasonableness."
 
 Braswell
 
 ,
 
 312 N.C. at 561-62
 
 ,
 
 324 S.E.2d at
 
 248 (citing
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at
 
 693 ). In the appellate context, a claim of ineffective assistance of counsel requires a showing that the appellate representation did not fall "within the range of competence demanded of attorneys in [appellate] cases."
 
 Strickland
 
 ,
 
 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at 693
 
 (citation and quotation marks omitted).
 

 Generally, "the decision not to press [a] claim on appeal [is not] an error of such magnitude that it render[s] counsel's performance constitutionally deficient under the test of
 
 Strickland
 
 ,"
 
 Smith v. Murray
 
 ,
 
 477 U.S. 527
 
 , 535,
 
 106 S.Ct. 2661
 
 , 2667,
 
 91 L.Ed.2d 434
 
 , 445 (1986) (citation omitted), as there is a presumption that "the challenged action might be considered sound trial strategy."
 
 Strickland
 
 ,
 
 466 U.S. at 689
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed.2d at 695
 
 (citation and quotation marks omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"
 

 Id.
 

 at 690
 
 ,
 
 104 S.Ct. at 2066
 
 ,
 
 80 L.Ed.2d at 695
 
 . Nevertheless, a defendant may be able to overcome this presumption of sound trial strategy and successfully establish "that his counsel was objectively unreasonable in failing to find arguable issues[.]"
 
 Robbins
 
 ,
 
 528 U.S. at 285
 
 ,
 
 120 S.Ct. 746
 
 ,
 
 145 L.Ed.2d at 780
 
 (internal citation omitted);
 
 see
 

 Strickland
 
 ,
 
 466 U.S. at 690-91
 
 ,
 
 104 S.Ct. at 2066
 
 ,
 
 80 L.Ed.2d at 695
 
 ("[S]trategic choices made after less than complete investigation are reasonable precisely
 
 *392
 
 to the extent that reasonable professional judgments support the limitations on investigation."). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."
 
 Strickland
 
 ,
 
 466 U.S. at 688
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed.2d at 694
 
 .
 
 *601
 
 Here, Defendant argues that his appellate counsel's performance in
 
 Baskins I
 
 was deficient in failing to challenge the trial court's findings of fact regarding the detectives' knowledge of the Buick's inspection status at the time of the initial stop. The State argues that "[s]ince the trial court's findings
 
 were
 
 supported by competent evidence, appellate counsel did not render deficient performance by failing to challenge the findings." (emphasis added).
 

 Contrary to the State's position, the record before this Court reveals that appellate counsel's failure to challenge the trial court's findings of fact regarding the inspection violation was not a reasonable strategic decision based on the argument's lack of merit.
 
 Todd
 
 ,
 
 369 N.C. at 712
 
 ,
 
 799 S.E.2d at 838
 
 . As the trial court denied Defendant's Motion to Suppress on the basis that the initial stop of the Buick was justified on three independent grounds, appellate counsel was tasked with reviewing the sufficiency-both legal and evidentiary-for each of those grounds.
 
 See
 

 Murray
 
 ,
 
 477 U.S. at 536
 
 ,
 
 106 S.Ct. at 2667
 
 ,
 
 91 L.Ed.2d at 445
 
 . However, appellate counsel apparently realized that she had failed to do so upon reading the State's brief, wherein the State noted the inspection violation as an additional justification for the stop. Appellate counsel thereafter submitted a reply brief in which she, for the first time, challenged the evidentiary support for the trial court's findings of fact concerning the inspection violation. That appellate counsel subsequently raised the argument in her reply brief demonstrates that the initial omission was an oversight rather than a reasoned judgment. Moreover, while not controlling, appellate counsel's subjective explanation is relevant to the determination of whether her performance was objectively deficient. On record before us is an affidavit submitted by appellate counsel in
 
 Baskins I
 
 , which directly contradicts the State's position that appellate counsel made a strategic decision not to challenge the trial court's findings of fact. The affidavit provides that "[a]fter reviewing the State's response to my brief, which relied on the inspection status as the basis for the stop, I realized that I had missed this issue in my initial review of the record." The affidavit further provides that "I knew from my training and experience as an appellate attorney that a reply brief cannot be used to make new arguments on appeal."
 

 Accordingly, the record sufficiently demonstrates that appellate counsel did not make a "reasonable professional judgment[ ]" when she neglected to challenge the trial court's findings of fact concerning the inspection status.
 
 Strickland
 
 ,
 
 466 U.S. at 691
 
 ,
 
 104 S.Ct. at 2066
 
 ,
 
 80 L.Ed.2d at 695
 
 . Defendant has thus satisfied the first prong of his ineffective assistance of counsel claim.
 

 *602
 
 ii.
 
 Prejudice
 

 Nonetheless, as our Supreme Court has explained, "[t]he fact that counsel made an error, or even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings."
 
 Braswell
 
 ,
 
 312 N.C. at 563
 
 ,
 
 324 S.E.2d at 248
 
 (citation omitted). In other words, a defendant must not only demonstrate that his counsel's performance was deficient, but also that he was prejudiced thereby.
 
 Strickland
 
 ,
 
 466 U.S. at 692
 
 ,
 
 104 S.Ct. at 2067
 
 ,
 
 80 L.Ed.2d at 696
 
 . " 'To show prejudice in the context of appellate representation, a [defendant] must establish a reasonable probability he would have prevailed on his appeal but for his counsel's unreasonable failure to raise an issue.' "
 
 Spruiell
 
 , --- N.C. App. at ----,
 
 798 S.E.2d at 805
 
 (quoting
 
 Rangel
 
 , 781 F.3d at 745 (internal quotation marks omitted) ). "[F]or purposes of establishing prejudice, a 'reasonable probability' ... simply means 'a probability sufficient to undermine confidence in the outcome' of the appeal."
 
 State v. Collington
 
 , --- N.C. App. ----, ----,
 
 814 S.E.2d 874
 
 , 887 (2018) (quoting
 
 Strickland
 
 ,
 
 466 U.S. at 694
 
 ,
 
 104 S.Ct. at 2068
 
 ,
 
 80 L.Ed.2d at
 
 698 ).
 

 *393
 
 In the instant case, Defendant argues that he has set out a proper showing of prejudice because "[i]f appellate counsel had argued that the findings of fact were not supported by competent evidence, [this Court] would have reversed the denial of the Motion to Suppress and vacated his convictions." On the other hand, the State argues that even "[h]ad appellate counsel challenged the findings regarding the [vehicle's] inspection status" in
 
 Baskins I
 
 , "this Court would have been bound to reject the argument because Detective O'Hal's testimony supported the findings." Moreover, the State argues that Defendant was not prejudiced by appellate counsel's failure to challenge the trial court's findings of fact because the trial court's ultimate "conclusion-upholding the traffic stop-was legally correct."
 

 We address each of the trial court's three justifications for the stop of the Buick in turn as they become relevant to the prejudice analysis.
 

 1. Inspection Violation
 

 When reviewing a trial court's order granting or denying a motion to suppress, this Court "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, ... and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). Findings of fact will be binding on an appellate court so long as they are supported by competent evidence.
 

 Id.
 

 *603
 
 In the present case, had appellate counsel in
 
 Baskins I
 
 challenged the trial court's relevant findings of fact, there is a reasonable probability that this Court would have concluded that the trial court's finding that "[t]he stop was initiated because of ... the inspection violation" was not supported by competent evidence and thus could not support the trial court's conclusion of the stop's validity.
 

 The State's Exhibit 1 was a printout of the DMV request for the Buick, which the detective testified was "the same information that [was] available to [him] when [he] ran the plate" on the Buick. However, the DMV printout contained no information concerning the Buick's inspection status, and the detectives did not claim any other source for their alleged knowledge of the Buick's inspection violation. In light of the actual DMV information that was presented, the detectives could not have known that the Buick's inspection was expired at the time Detective O'Hal decided to stop the Buick. Moreover, even if the trial court had noted the discrepancy between the detectives' testimony and the DMV information presented, the trial court concluded as a matter of law that "[t]he officers had probabl[e] cause to stop the [vehicle] based on the information received
 
 from the DMV search
 
 ... that an inspection violation had occurred." (emphasis added). Because the DMV information presented at the hearing contained no information concerning an inspection violation, we agree with Defendant that there exists a reasonable probability that this Court would have found the findings regarding the inspection to be unsupported by competent evidence had appellate counsel challenged them in
 
 Baskins I
 
 .
 
 See, e.g.
 
 ,
 
 State v. Fisher
 
 ,
 
 141 N.C. App. 448
 
 , 454,
 
 539 S.E.2d 677
 
 , 682 (2000) ("We recognize that contradictions and inconsistencies rarely render a court's factual findings erroneous. However, the testimony presented at the suppression hearing ... contained material inconsistencies in the State's own evidence, not simply contradictions between the State's evidence and defendant's evidence.").
 

 Given the reasonable probability that the inspection status would not have been found to support the validity of the stop in
 
 Baskins I
 
 , this Court would have next proceeded to an examination of Defendant's arguments pertaining to the two additional grounds upon which the trial court based its denial of Defendant's Motion to Supress.
 
 See
 

 Dixon v. Dixon
 
 ,
 
 67 N.C. App. 73
 
 , 77,
 
 312 S.E.2d 669
 
 , 672 (1984).
 

 2. Reasonable Mistake of Fact
 

 On appeal from the trial court's denial of Defendant's Motion to Suppress in
 
 Baskins I
 
 , appellate counsel argued that "the trial court erred
 
 *604
 
 in ruling that police lawfully stopped the car in which [Defendant] was
 
 *394
 
 riding because a mistaken belief of fact that a traffic violation occurred is objectively unreasonable and cannot justify a warrantless seizure." We conclude that there is a reasonable probability this Court would have agreed with this argument had it been addressed in
 
 Baskins I
 
 .
 

 "[T]o conduct an investigatory warrantless stop and detention of an individual, a police officer must have reasonable suspicion, grounded in articulable and objective facts, that the individual is engaged in criminal activity."
 
 State v. Hudgins
 
 ,
 
 195 N.C. App. 430
 
 , 433,
 
 672 S.E.2d 717
 
 , 719 (2009) (citation omitted). "[T]he reasonable suspicion standard requires that the stop be based on specific and articulable facts ... as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training."
 
 State v. Barnard
 
 ,
 
 362 N.C. 244
 
 , 247,
 
 658 S.E.2d 643
 
 , 645 (2008) (alteration omitted) (citation and quotation marks omitted). Indeed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' "
 
 Riley v. California
 
 , --- U.S. ----,
 
 134 S.Ct. 2473
 
 , 2482,
 
 189 L.Ed.2d 430
 
 , 439 (2014) (citation omitted). Nevertheless, "[t]o be reasonable is not to be perfect[.]"
 
 Heien v. North Carolina
 
 , --- U.S. ----, ----,
 
 135 S.Ct. 530
 
 , 536,
 
 190 L.Ed.2d 475
 
 , 482 (2014). The Fourth Amendment therefore "allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' "
 

 Id.
 

 (quoting
 
 Brinegar v. United States
 
 ,
 
 338 U.S. 160
 
 , 176,
 
 69 S.Ct. 1302
 
 , 1311,
 
 93 L.Ed. 1879
 
 , 1891 (1949) ). That some leeway is provided, however, does not afford law enforcement officials the unfettered liberty to be inaccurate. "The Fourth Amendment tolerates only
 
 reasonable
 
 mistakes, and those mistakes-whether of fact or law-must be
 
 objectively
 
 reasonable."
 

 Id.
 

 at ----,
 
 135 S.Ct. at 539
 
 ,
 
 190 L.Ed.2d at 486
 
 .
 

 Here, the detectives contended that they also stopped the Buick for having an expired registration even though the registration was, in fact, still valid. Nevertheless, the trial court concluded that even "[i]f the officers were mistaken as to whether or not a Chapt. 20 violation existed at the time of the stop, such was a reasonable mistake of law that did not render the stop invalid" under the Fourth Amendment. Our duty in the instant case is simply to determine whether there is a reasonable probability that this Court would have disagreed with this conclusion of law had it been addressed in
 
 Baskins I
 
 .
 

 Initially, we note that the case at bar does not involve a mistake of law. The detective testified that he was aware that the North Carolina statute provides a fifteen-day grace period following the date of a vehicle's registration expiration during which the vehicle may be lawfully operated, and that "to the best of [his] knowledge," "it was in fact lawful for [Defendant's] vehicle to be operated" on the date of the stop.
 

 *605
 

 N.C. Gen. Stat. § 20-66
 
 (g) (2017). The detective's belief that the Buick was being operated without a valid registration was thus a mistake of fact rather than of law.
 

 In addition, not only did the detective testify that he knew there was a fifteen-day grace period following expiration of a vehicle's registration, but the DMV information upon which the detective relied at the time of the stop explicitly provided that the Buick's registration was "VALID THRU: 10152014." Nevertheless, the detective testified that his oversight regarding the vehicle's lawful status was due to the fact that "We're not going to scroll down to check a date being valid or not valid." That the detectives stopped the Buick for a registration violation despite having intentionally neglected to read the very sentence in which the relevant expiration date appeared renders questionable the reasonableness of any resultant mistake that ensued.
 
 See
 

 State v. Styles
 
 ,
 
 362 N.C. 412
 
 , 414,
 
 665 S.E.2d 438
 
 , 439 (2008) ("This Court requires that the stop be based on specific and articulable facts ... as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.") (alterations omitted) (citation and quotation marks omitted). This is also not a case in which the factual assessment regarding the Buick's registration status was required to be made "on the fly."
 
 Heien
 
 , --- U.S. at ----,
 
 135 S.Ct. at 539-40
 
 ,
 
 190 L.Ed.2d at 486
 
 . Rather, the detective accessed the DMV information while he was following the Buick as it was obeying the speed limit, at 7:00 a.m., in an
 
 *395
 
 area with "not a lot of vehicles on the road," and with the active assistance of at least four additional officers.
 

 Thus, in the present case the detectives had an admittedly accurate understanding of the law, which was coupled with information that was readily available to them indicating that the Buick's registration was still valid. Under these circumstances, we conclude that there is a reasonable probability that this Court would have determined that the facts do not constitute the sort of objectively reasonable mistake of fact tolerable under the Fourth Amendment, and therefore these facts could not serve as a justification for the stop.
 

 3. Reasonable Suspicion
 

 Finally, had appellate counsel challenged the trial court's findings of fact in
 
 Baskins I
 
 , this Court would have been required to address Defendant's argument that "the trial court erred in concluding that reasonable suspicion existed to stop the car in which [Defendant] was a passenger ... to conduct a narcotics investigation when police lacked individualized reasonable suspicion and acted on the same hunch they applied to everyone who arrived in Greensboro on the China Bus." We
 
 *606
 
 conclude that there is a reasonable probability that this Court would have found this argument meritorious in
 
 Baskins I
 
 .
 

 As explained
 
 supra
 
 , "[a]n investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' "
 
 State v. Watkins
 
 ,
 
 337 N.C. 437
 
 , 441,
 
 446 S.E.2d 67
 
 , 70 (1994) (quoting
 
 Brown v. Texas
 
 ,
 
 443 U.S. 47
 
 , 51,
 
 99 S.Ct. 2637
 
 , 2641,
 
 61 L.Ed.2d 357
 
 , 362 (1979) ). Whether an officer had a reasonable suspicion to stop a vehicle for investigatory purposes must be considered in light of the totality of the circumstances.
 

 Id.
 

 (citation omitted). "The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training."
 

 Id.
 

 (citing
 
 Terry v. Ohio
 
 ,
 
 392 U.S. 1
 
 , 21-22,
 
 88 S.Ct. 1868
 
 , 1879-81,
 
 20 L.Ed.2d 889
 
 , 906 (1968), and
 
 State v. Thompson
 
 ,
 
 296 N.C. 703
 
 , 706,
 
 252 S.E.2d 776
 
 , 779 (1979) ). The justification must be objective rather than subjective.
 
 Id.
 
 at 442,
 
 446 S.E.2d at
 
 70 (citing
 
 United States v. Sokolow
 
 ,
 
 490 U.S. 1
 
 , 7,
 
 109 S.Ct. 1581
 
 , 1585,
 
 104 L.Ed.2d 1
 
 , 10 (1989) ). The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or 'hunch.' "
 
 Sokolow
 
 ,
 
 490 U.S. at 7
 
 ,
 
 109 S.Ct. 1581
 
 ,
 
 104 L.Ed.2d at 10
 
 (citation and quotation marks omitted).
 

 Here, we note that the trial court's findings of fact in its denial of Defendant's Motion to Suppress provided only that "[t]he stop was initiated because of the expired registration and the inspection violation." Moreover, the conclusion that the detectives "had reasonable suspicion that criminal activity related to narcotics was afoot" was based solely on the facts (1) that the detectives observed Defendant and Ms. Bone exit the China Bus carrying small bags at the "same bus stop that a lot of heroin is being transported from New York to the Greensboro area[;]" and (2) that while waiting for his ride at the adjacent gas station, Defendant briefly looked toward Detective McPhatter's unmarked vehicle and "shooed [his vehicle] off[,]" at which point Defendant's ride-the Buick-pulled into the parking lot.
 

 The facts of this case bear a marked likeness to those presented in the United States Supreme Court case
 
 Reid v. Georgia
 
 , in which
 

 [t]he appellate court's conclusion ... that the DEA agent reasonably suspected the petitioner of wrongdoing rested on the fact that the petitioner appeared to the agent to fit the so-called "drug courier profile," a somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics. Specifically, the court thought it relevant that (1) the petitioner had arrived from
 
 *607
 
 Fort Lauderdale, which the agent testified is a principal place of origin of cocaine sold elsewhere in the country, (2) the petitioner arrived early in the morning, when law enforcement activity is diminished, (3) he and his companion appeared to the agent to be trying to conceal the fact that they were traveling together, and (4) they apparently
 
 *396
 
 had no luggage other than their shoulder bags.
 

 448 U.S. 438
 
 , 440-41,
 
 100 S.Ct. 2752
 
 , 2754,
 
 65 L.Ed.2d 890
 
 , 894 (1980). From these facts, the Supreme Court concluded
 

 that the agent could not, as a matter of law, have reasonably suspected the petitioner of criminal activity on the basis of these observed circumstances. Of the evidence relied on, only the fact that the petitioner preceded another person and occasionally looked backward at him as they proceeded through the concourse relates to their particular conduct. The other circumstances describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure.
 

 Id
 
 . at 441,
 
 100 S.Ct. at 2754
 
 ,
 
 65 L.Ed.2d at 894
 
 .
 

 In the instant case, the detectives' inference of criminal activity from Defendant waving off Detective McPhatter's unmarked vehicle at the gas station "was more an inchoate and unparticularized suspicion or 'hunch,' than a fair inference in the light of [their] experience[.]"
 
 Id
 
 . And, even when viewed through the officers' experience that "persons that get on this bus line could possibly be trafficking in narcotics[,]" the fact that an individual-entirely unknown to officers-is seen carrying "just some small, little luggage bags" while returning on the China Bus from a weekend trip to New York is far "too slender a reed to support the seizure in this case."
 
 Id
 
 .
 

 Accordingly, had appellate counsel challenged the findings of fact in
 
 Baskins I
 
 , we conclude that there is a reasonable probability that this Court would have determined that the trial court also erred in denying Defendant's Motion to Suppress on the grounds that the detective "had reasonable suspicion that criminal activity related to narcotics was afoot when he stopped the Buick."
 

 ***
 

 *608
 
 Despite the trial court's reluctance to reach the merits of Defendant's Motion for Appropriate Relief on the grounds of ineffective assistance of appellate counsel, we are able to conclude from the cold record developed on appeal that the trial court erred in denying Defendant's Motion for Appropriate Relief. Had appellate counsel challenged the trial court's findings of fact regarding the Buick's inspection status in its order denying Defendant's Motion to Suppress, there is a reasonable probability that this Court would have concluded that those findings of fact were not supported by competent evidence. This Court would have then proceeded to the two arguments that Defendant did raise in
 
 Baskins I
 
 . Given the merit of those two arguments, we conclude that there is a reasonable probability that had appellate counsel challenged the trial court's findings of fact concerning the inspection violation, Defendant would have been successful in his appeal in
 
 Baskins I
 
 . Accordingly, the trial court erred when it denied Defendant's Motion for Appropriate Relief on the grounds of ineffective assistance of appellate counsel.
 

 Conclusion
 

 For the reasons explained herein, the trial court's order denying Defendant's Motion for Appropriate Relief is reversed and this matter is remanded for entry of an order granting Defendant's Motion for Appropriate Relief and vacating his convictions.
 

 REVERSED AND REMANDED FOR NEW TRIAL.
 

 Judges ELMORE and HUNTER, JR. concur.
 

 [1]
 

 Named after
 
 North Carolina v. Alford
 
 ,
 
 400 U.S. 25
 
 ,
 
 91 S.Ct. 160
 
 ,
 
 27 L.Ed.2d 162
 
 (1970), a defendant is said to have entered an
 
 Alford
 
 plea when the defendant pleads guilty without an admission of guilt.
 

 [2]
 

 We also note the particular appropriateness of an appellate court ruling on the merits of an ineffective assistance of appellate counsel claim, as that inquiry now necessitates an analysis of whether there is a reasonable probability that the defendant ultimately " 'would have prevailed on his appeal but for his counsel's unreasonable failure to raise an issue.' "
 
 Spruiell
 
 , --- N.C. App. at ----,
 
 798 S.E.2d at 805
 
 (quoting
 
 United States v. Rangel
 
 ,
 
 781 F.3d 736
 
 , 745 (4th Cir. 2015) ).