STATE OF NORTH CAROLINA v. JAMES MANDEL WHITE

No. COA01-1495

(Filed 17 December 2002)

## 1. Evidence— fingerprints on stolen items—admissible

The trial court did not err in a prosecution for first-degree murder and armed robbery by admitting evidence that defendant's fingerprints were on boxes of crackers and candy found in a trailer in which defendant was staying where there was testimony that defendant brought food home in a trash bag around the time of the murder, that the same brands were among the items disturbed in the victim's home, and that the trash bag used to carry the food came from the victim's home.

## 2. Evidence— fingerprints on stolen items—not unduly prejudicial

The probative value of fingerprints on cracker and candy boxes linked to a murder and robbery was not outweighed by the danger of unfair prejudice because the evidence does not provoke an emotional response or otherwise improperly influence the jury in its consideration of the evidence.

## 3. Evidence— expert—implicit request—specific objection required

Defendant did not preserve for appellate review the issue of whether a police lieutenant was properly qualified to testify about the meaning of a pillow found on the victim's face after a robbery and murder where the prosecutor implicitly elicited. expert testimony by inquiring about the significance of the pillow "based on your training and experience" and defendant did not specifically object to the qualification of the lieutenant as an expert.

## 4. Evidence— expert—significance of pillow on victim's face

Testimony from a police lieutenant about the significance of a pillow found on a murder and robbery victim's face was properly admitted where the officer testified in the form of an opinion based on his expertise and the testimony was likely to assist the jury in making an inference from the circumstances of the crime.

**5. Evidence— police officer's opinion—not an expert on this question—harmless error**

There was no prejudicial error in a first-degree murder and armed robbery prosecution, even though the court improperly allowed a police lieutenant to testify that a certain television was "more than probably" from the victim's residence, because substantial evidence linked defendant to the crime.

**6. Robbery— armed—evidence of taking**

There was sufficient evidence of a taking to support an armed robbery conviction where defendant went to kill a man who owed him money and returned covered in blood and bragging that he had killed the man; defendant left without a car, television, or groceries, and returned with those things; the victim's car was stolen and burned; the space for the television in the victim's entertainment center was empty, with instruction books being found for a television model which was not found in his house but which defendant sold; the victim's groceries were disturbed, with the same brands being found in the victim's house and being brought home by defendant; and the trash bag which defendant used to bring in the groceries came from a roll of bags in the victim's home.

Appeal by defendant from judgment entered 2 May 2001 by Judge Jack A. Thompson in Cumberland County Superior Court. Heard in the Court of Appeals 12 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*James R. Parish, for defendant-appellant.*

CAMPBELL, Judge.

Defendant was indicted on 26 June 2000 for first degree murder and robbery with a dangerous weapon of Ernest Odell Easom ("Easom") and felonious burning of Easom's automobile. Defendant was tried before a jury on 16 April 2001, Judge Jack A. Thompson ("Judge Thompson") presiding. On 2 May 2001, the jury returned verdicts of guilty of murder in the first degree under the felony murder rule, guilty of robbery with a dangerous weapon, and not guilty of burning personal property. Judge Thompson arrested judgment on the conviction of robbery with a dangerous weapon, and sentenced the defendant to life imprisonment without parole.

The State's evidence tended to show that Easom was an elderly man who occasionally hired people to do his yard work. Easom paid for these services with a meal and cash. Defendant was hired by Easom in mid-November 1999 to trim tree limbs, and was paid in part with a meal. On 12 December 1999, defendant began staying approximately one quarter mile from Easom's home in the trailer of an acquaintance, Jeffrey Allen Gallier ("Gallier").

In the early evening hours of Monday, 13 December 1999, the defendant visited a friend, Andrea McKenzie ("McKenzie") and asked her for a knife sharpener, and explained he planned to "take care of" someone who owed him money. He obtained a long butcher knife with a brown handle. The knife appeared to be rusty. McKenzie testified the defendant said that if he wasn't paid he was going to kill the person who owed him money. At approximately 9 p.m. that evening, defendant returned to McKenzie's home driving a car. There was blood all over him and the knife. Defendant said, "I told you I was going to get him." He took a shower and left his clothes to be washed. Defendant then went back outside, brought a television into the house, and asked McKenzie if she wanted to buy it for $165 or $175. McKenzie accepted the television and told the defendant she would pay him in a few days. Later that week McKenzie sold the television to her relative Jovan Carter ("Carter") for $40.

Gallier, the man with whom defendant was staying, testified that on either Monday or Tuesday, 13 or 14 December, defendant came in around midnight with a black trash bag with groceries including Bob's Candy Canes, Ritz Crackers, Carefree Gum, coffee, canned goods, macaroni with beef, and eggs and other trash bags. Gallier found this strange since defendant had no source of income or money. Defendant explained that a lady friend had given him the groceries. Around this time Gallier noticed that his foot-long, wooden-handled kitchen knife was missing. The knife was not rusty, but did give that appearance.

The day following the murder and robbery the Cumberland County Sheriff's Office was called regarding a burning car. The license plate revealed the car belonged to Easom. On Friday, 17 December 1999, Detective Bobby Horne ("Detective Horne") went to Easom's home to investigate the burning of the car. As he arrived, some of Easom's family also arrived and indicated they were worried because they hadn't seen Easom in a few days. Detective Horne approached the house, found it locked, but looked through a window and saw a body lying in the kitchen.

STATE v. WHITE

[154 N.C. App. 598 (2002)]

Detective Horne called for assistance and an investigation began. There was no sign of forced entry. After prying the back door open with a crowbar, Officers entered and found Easom lying on his back with a pillow over his face. The pillow had a bloodstain from what appeared to be a long knife blade, as if the knife had been wiped off on the pillow. Coins were found on the floor around Easom's body, but no wallet or currency was found on his person. The kitchen cabinets were open and appeared to have been disturbed, and there were boxes of food on the floor. There were boxes of Bob's Candy Canes, Ritz Crackers, and Carefree Gum in the home. There was a box of white trash bags on the kitchen table and large black trash bags on the china cabinet. In the living room the entertainment center had a space where a television would normally go and a dust pattern consistent with there having been an item there. Instruction books for a Zenith Two Model television were found, but no such television was in the home.

An autopsy revealed Easom died from three stab wounds. One wound was to the left side of his abdomen. Another was to his upper right chest, penetrating his lung. The incision from the third indicated that it took at least three strokes to lacerate his right carotid artery. He had not been suffocated with the pillow.

Further evidence was developed during the investigation. An expert, who studied the trash bags' extrusion lines and the melt pattern that is part of the manufacturing process, testified that, in his opinion, based on markings from the manufacturing process, the trash bag defendant brought to Gallier's trailer was from the roll found in Easom's home. Defendant's fingerprints were on some of the groceries he brought into Gallier's trailer. The television recovered from Carter's home was a Zenith Two Model, the same brand and model as the instruction book found in Easom's home.

Easom's sister-in-law, who lived behind him, recalled the last time she saw Easom alive was the afternoon of 13 December 1999. That evening at approximately 8 p.m. she noticed the brake lights of Easom's car repeatedly going on and off. The car was then driven away. She noted this was unusual because Easom never left home so late at night.

Demarco Murphy ("Murphy"), a friend of defendant, testified he was with defendant a few days before the incident and defendant had threatened he was going to kill a man who owed him money. Jerome Banks ("Banks"), a cellmate of defendant, testified defendant admit-

ted he had started robbing a man he knew and when the man resisted he stabbed the man and cut his throat because the man knew him. Banks testified defendant told him defendant had taken the man's television and left.

Defendant declined to submit evidence.

Defendant argues the trial court erred by: (I) admitting the fingerprint evidence; (II) allowing a police investigator to testify that the pillowcase placed over Easom's face indicated that Easom knew his attacker; (III) allowing the same investigator to testify the television recovered from Carter's residence was "more than probably" Easom's; (IV) failing to dismiss for insufficient evidence the charge of robbery and felony murder.

## I. Fingerprint Evidence

[1] Defendant asserts the trial court erred by admitting evidence of defendant's fingerprints on a box of Ritz Crackers and Bob's Candy Canes found inside Gallier's trailer. Defendant asserts that the evidence is not relevant, and alternatively, if it is relevant that its probative value was substantially outweighed by danger of unfair prejudice.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2001). "[I]n a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible." *State v. Collins*, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994). "[E]ven though a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991). Here, the fingerprint evidence tends to show defendant touched the food items. The evidence thereby tends to corroborate Gallier's testimony concerning these food items. When considered with Gallier's testimony that defendant brought the food home around the time of the murder, that the brands of food were the same as the disturbed items in Easom's house, and the expert's testimony that the trash bag used to transport the food came from Easom's home, the fingerprint evidence tends to "shed light" on the robbery. Therefore, the fingerprint evidence was relevant.

**[2]** "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-1, Rule 403 (2001). "Unfair prejudice has been defined as 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986) (quoting Commentary to N.C. R. Evid. 403). Whether or not to exclude evidence as being unfairly prejudicial is a matter "within the sound discretion of the trial judge." *Id.* "[H]is ruling may be reversed for an abuse of discretion only upon a showing that it 'was so arbitrary that it could not have been the result of a reasoned decision.' " *Id.*, (quoting *State v. Thompson*, 314 N.C. 618, 626, 336 S.E.2d 78, 82 (1985)). While this evidence tends to support the finding that a robbery occurred,. it does not provoke an emotional response or another improper basis influencing the jury in its consideration of the evidence. This evidence was not unfairly prejudicial, and therefore was properly admitted. Accordingly, we hold admission of this evidence was not error.

## II. Pillowcase Testimony

**[3]** Defendant argues the trial court erred in permitting Lieutenant Ray Wood ("Lieutenant Wood") to testify that the pillow placed across Easom's face was significant because it suggested he knew his attacker. Defendant argues that Lieutenant Wood was testifying as a lay witness, and as such could only testify to his personal observations. Since Lieutenant Wood did not personally observe the pillow over Easom's face, he could not testify to the conclusions he drew from this fact. The State asserts Lieutenant Wood was testifying as an expert witness, and as such could testify that the pillow over Easom's face indicated to him that Easom knew his attacker.

Generally an expert witness is tendered to the court for a ruling that the witness possesses the requisite skill.

> While the better practice may be to make a formal tender of a witness as an expert, such a tender is not required. Further, absent a request by a party, the trial court is not required to make a formal finding as to a witness' qualification to testify as an expert witness. Such a finding has been held to be implicit in the court's admission of the testimony in question. Defendant must specifically object to the qualifications of an expert witness in order to preserve the objection.

*State v. White*, 340 N.C. 264, 293-94, 457 S.E.2d 841, 858 (1995) (citations omitted). Therefore, "a mere general objection to the content of the witness's testimony will not ordinarily suffice to preserve the matter for subsequent review." *State v. Hunt*, 305 N.C. 238, 243, 287 S.E.2d 818, 821 (1982).

The prosecutor was implicitly eliciting expert testimony by inquiring, "[W]hat was the significance of that [the pillow over Easom's face] to you based on your training and experience?" Defendant made a general objection. The court overruled defendant's objection thereby implicitly accepting the witness as an expert. Since defendant made a general objection to the Lieutenant's testimony, and did not specifically object to the qualification of the Lieutenant as an expert, the issue of whether Lieutenant Wood was properly qualified as an expert was not preserved for appellate review.

[4] The issue remains whether Lieutenant Wood's expert testimony was "patently inadmissible and prejudicial" as asserted by defendant. Expert witnesses may testify regarding a fact in issue in the form of an opinion. N.C. Gen. Stat. § 8C-1, Rule 702 (2001). "The facts or data in the particular case upon which an expert bases an opinion or inference may be of those perceived by or made known to him at or before the hearing." N.C. Gen. Stat. § 8C-1, Rule 703 (2001). Moreover, "expert testimony is properly admissible when such testimony can assist the jury to draw certain inferences from facts because the expert is better qualified." *State v. Bullard*, 312 N.C. 129, 139, 322 S.E.2d 370, 376 (1984). "[T]he trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony." *Id.*, 312 N.C. at 140, 322 S.E.2d at 376. Here, Lieutenant Wood had "training, and various courses and experience in working certain cases" which led him to conclude that "there are times that the significance of an object such as a pillow or a cloth being placed over somebody's face can mean in a case that the perpetrator knew the victim and did not want to see their face or have their face appear either before, during, or after the crime." Since Lieutenant Wood testified in the form of an opinion based on his expertise, and the testimony was likely to assist the jury making an inference from the circumstances of the crime, the trial court properly admitted the testimony.

### III. Television Testimony

[5] Defendant argues the trial court erred by permitting Lieutenant Wood to testify that in his opinion the Zenith Two Model television

found in Carter's possession was "more than probably the television from Easom's residence."

Since the qualification of a witness as an expert depends upon their "knowledge, skill, experience, training or education," a witness may be an expert on some issues and classified as a layman on other issues. N.C. Gen. Stat. § 8C-1, Rule 702. There is no indication here of special training or other qualifications which would elevate Lieutenant Wood's conclusion regarding the original ownership of the television to that of an expert's opinion. There is also no indication of the court's acceptance of Lieutenant Wood as an expert on this matter.

As a layman, Lieutenant Wood's testimony must have been rationally based on his perception and helpful to the jury. *See* N.C. Gen. Stat. § 8C-1, Rule 701 (2001). Here, Lieutenant Wood's testimony that the recovered television was "more than probably" Easom's television was not based upon his perception. Moreover, Lieutenant Wood was in no better position than the jury to deduce whether the television found with Carter was Easom's television. The jury is charged with drawing its own conclusions from the evidence, and without being influenced by the conclusion of Lieutenant Wood. Therefore, we find the trial court erred in permitting this testimony.

The next issue, is whether or not this error was prejudicial. "In order to show prejudicial error, defendant must show that a different result would have been reached at trial if the evidence had not been admitted." *State v. Patterson*, 149 N.C. App. 354, 364, 561 S.E.2d 321, 327 (2002) (citing N.C. Gen. Stat. § 15A-1443(a) (1999)). Since there is substantial circumstantial evidence which links defendant to this crime, and the jury could have drawn the conclusion that defendant committed the crime without input from Lieutenant Wood, we hold defendant has not met his burden of demonstrating that he would not have been found guilty if Lieutenant Wood's testimony had not been permitted. Therefore, though the testimony was error, we hold it was not prejudicial error.

### IV. Insufficient Evidence of Robbery

[6] Defendant asserts there was insufficient evidence to prove he robbed Easom of Easom's car, television, or groceries because the only evidence submitted is circumstantial. Without sufficient evidence to prove the items were taken by defendant, defendant asserts the trial court erred by denying defendant's motion to dismiss.

In reviewing a motion to dismiss this Court asks "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence is that which a reasonable juror would consider sufficient to support a conclusion that each essential element of the crime exists." *State v. Baldwin*, 141 N.C. App. 596, 604, 540 S.E.2d 815, 821 (2000). "In reviewing challenges to the sufficiency of evidence, the evidence must be viewed in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Payne*, 149 N.C. App. 421, 425, 561 S.E.2d 507, 509 (2002). Violation of N.C. Gen. Stat. § 14-87, robbery with firearms or other dangerous weapons, requires a person who "with use or threatened use of any . . . dangerous weapon . . ., whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another . . . either day or night." N.C. Gen. Stat. § 14-87(a) (2001).

Defendant asserts there was insufficient evidence of a taking because the only evidence of the taking was circumstantial. We disagree. "Unquestionably circumstantial evidence is 'essential and, when properly understood and applied, highly satisfactory in matters of the gravest moment.' " *State v. Adcock*, 310 N.C. 1, 28, 310 S.E.2d 587, 602 (1984) (citations omitted). For circumstantial evidence to support a conviction "the jurors must be convinced of the defendant's guilt beyond a reasonable doubt." *Id.*

Defendant left to kill a man who owed him money, and returned, covered in blood, and bragging he had killed the man. Defendant left without a car, television or groceries, and returned with those items. Easom's car was stolen and found burned. The space in Easom's entertainment center that would normally contain a television was empty. Easom had Zenith Model Two instruction books for a television not found in his house, but matching the television defendant sold to McKenzie. Easom's groceries had been disturbed, and the same brand item groceries were brought home by defendant. The trash bag defendant used to bring in the groceries came from a roll of bags in Easom's home. Taking this evidence in the light most favorable to the State a reasonable jury could have been convinced beyond a reasonable doubt that there was a taking. Therefore, the trial court properly denied defendant's motion to dismiss for insufficient evidence of the taking element of the crime of robbery with a dangerous weapon.

No prejudicial error.

Judges TIMMONS-GOODSON and HUDSON concur.