An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1112

Filed 17 December 2025

Rowan County, Nos. 22CR282428-790, 22CR282583-790, 24CR000206-790

STATE OF NORTH CAROLINA

v.

RODRIQUEZ DWAYNE MASHORE

Appeal by Defendant from judgments entered 17 May 2024 by Judge Clifton H. Smith in Rowan County Superior Court. Heard in the Court of Appeals 11 September 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Tanisha D. Folks, for the State.*

> *Law Office of Jason R. Page, PLLC, by Jason R. Page, for the Defendant.*

WOOD, Judge.

Rodriquez Dwayne Mashore ("Defendant") appeals from judgments following a jury verdict finding him guilty of three counts of possession with intent to sell and deliver Schedule II controlled substance, felony fleeing to elude arrest, driving while impaired, and possession of drug paraphernalia as well as a plea for habitual felon.

On appeal, Defendant contends the trial court erred by (1) denying Defendant's motion to dismiss the charges for possession of drug paraphernalia and possession with intent to sell and deliver for insufficiency of the evidence, and (2) admitting into evidence a video of Defendant's interrogation. Additionally, Defendant contends he was deprived of his right to effective assistance of counsel due to attorney errors. After careful review of the record, we conclude the trial court did not err; however, Defendant did not receive effective assistance of counsel. Therefore, we vacate and remand for a new trial.

## I.    Factual and Procedural Background

On 30 August 2022, Detective Jagger Naves ("Detective Naves") with the Rowan County Sheriff's Office saw Defendant and a passenger in a car at a gas station. Defendant was driving a Cadillac with expired tags, and those tags were registered to a BMW. Detective Naves was able to identify Defendant as the driver as he was previously familiar with Defendant and checked his license information which revealed it had been suspended and revoked.

Based on the concerns noted with the license and registration, when Defendant pulled out from the gas station, Detective Naves turned on his lights and sirens and attempted to conduct a traffic stop. Defendant failed to pull over and, instead, accelerated through three stop signs, reaching a speed of 45 miles per hour in a 35 mile per hour residential zone. Detective Naves believed Defendant's driving was reckless and employed a "pit maneuver" in which he hit the rear of Defendant's

vehicle to stop him in order to avoid a dangerous high-speed chase on larger roads. This maneuver caused Defendant's vehicle to spin around and stop in the opposite direction.

Once both vehicles came to a stop, Detective Naves exited his patrol car. Defendant's passenger had already exited their vehicle. Detective Naves ordered the passenger to stop and to wait where he was and ordered Defendant to remain in the vehicle. Both complied with Detective Naves directives while he waited for backup to arrive.

Once backup arrived, Defendant and passenger were both detained for investigation. Detective Naves noted the odor of alcohol on Defendant's breath and requested that a "Driving While Intoxicated ("DWI") officer" from the city policy department come to the scene.

Officer Hayden Lindquist ("Officer Lundquist") arrived at the scene to perform a DWI investigation. He smelled the odor of alcohol on Defendant's breath and then conducted a standardized field sobriety test, which indicated Defendant was under the influence of alcohol.

Officers canvased the scene and located a black bag within fifteen feet of Defendant's vehicle. Inside the bag was a digital scale, razor blade, small bags, an orange tablet, an unknown tablet and 5.47 grams of suspected crack cocaine. More than four feet from the black bag was a small blue bag that contained .32 grams of suspected crack cocaine and seven tablets of an unknown substance weighing 1.9

grams. Inside the vehicle, officers seized three cell phones and small pieces of crack cocaine in the floorboards which tested positive on the presumptive test at the scene.

Although Detective Naves was wearing a body camera, he did not activate it at the scene. In addition, officers did not take any photos of the bags or other evidence before collecting them. Upon returning to the sheriff's office, Detective Naves activated his body camera prior to interviewing Defendant.

On 10 July 2023, Defendant was indicted on three counts of possession with intent to sell and deliver a Schedule II controlled substance and felony fleeing to elude arrest. On 31 July 2023, Defendant was indicted for driving while impaired and possession of drug paraphernalia.

Defendant's case came on for trial in Rowan County Superior Court on 15 May 2024. At trial, a forensic chemist testified to the results of the lab analysis on seven different items in evidence which were determined to be: (1) 4.795 grams of cocaine base, crack, (2) .100 grams of cocaine base, crack, (3) 1.021 grams of broken pieces of methamphetamine and Eutylone, (4) a .138 gram tablet of methamphetamine and Eutylon, (5) .185 grams of methamphetamine and Eutylon, (6) .527 grams of cocaine, and (7) .177 grams of cocaine base, crack.

Officer Lindquist testified concerning his administration of the Horizontal Gaze Nystagmus ("HGN") test on Defendant. He stated that he saw four of the six clues, which indicated a high probability Defendant was impaired. He also smelled an odor of alcohol and observed Defendant had red glassy eyes and slurred speech.

- 4 -

He testified that in his opinion Defendant had consumed a sufficient amount of alcohol to appreciably impair his mental or physical faculties or both.

Detective Naves' interview of Defendant was also entered into evidence. However, portions of the video were muted when shown to the jury based on stipulations made by the State and Defendant.

The State attempted to introduce into evidence recordings of phone calls made from the jail during the time Defendant was incarcerated. The calls were made from the account of Anthony Rankin to unknown numbers. However, Detective Naves actually believed Defendant was making the calls using Anthony Rankin's account. During the phone calls the speaker made numerous incriminating statements such as "dope flew everywhere" when the officer "pitted the back of my Cadillac" when referring to the car spinning due to the pit maneuver, and "get my money from Ant" during a conversation implying that the items in the bag were being sold to Ant. However, during *voir dire* testimony, Detective Naves testified that he could not recognize Defendant's voice. Therefore, Defendant objected to the admission of the calls into evidence based on grounds of speculation, lack of foundation, and prejudice. The trial court allowed the State time to submit case law on the issue and ultimately sustained Defendant's objection to the recorded phone calls the next morning. Notwithstanding the ruling in Defendant's favor, immediately on cross examination, defense counsel continued to question Detective Naves about the calls from the jail that were successfully suppressed. Detective Naves testified that he thought he had

to be a voice expert in order to testify that he knew the voice on the phone calls. Defense counsel informed Detective Naves he could give his opinion and then Detective Naves asserted that he definitely recognized the voice on the recordings as Defendant's. Based on this foundation, the State moved to admit the phone calls into evidence, and the trial court admitted the calls over defense counsel's objection.

At the close of the State's evidence, Defendant made a motion to dismiss all charges for insufficient evidence, which the trial court denied. He renewed the motion at the close of all evidence, which was also denied. The jury returned verdicts of guilty on all counts. Defendant then pleaded no contest to being a habitual felon. Defendant gave oral notice of appeal in open court following sentencing.

## II.    Analysis

Defendant raises two issues on appeal: did the trial court err by (1) denying Defendant's motion to dismiss the charges for possession of drug paraphernalia and possession with intent to sell and deliver for insufficiency of the evidence, and (2) admitting into evidence a video of Defendant's interrogation. Additionally, Defendant contends he was deprived of his right to effective assistance of counsel due to attorney errors.

**A. Motion to Dismiss**

Defendant contends the trial court erred by denying Defendant's motion to dismiss the charges for possession of drug paraphernalia and possession with intent to sell and deliver for insufficiency of the evidence.

"This Court reviews challenges to the sufficiency of the evidence de novo." *State v. Elder*, 278 N.C. App. 493, 499, 863 S.E.2d 256, 264 (2021), *aff'd*, 383 N.C. 578, 881 S.E.2d 227 (2022).

> Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.
>
> If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed.

*State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). As Defendant raises concerns of insufficiency of the evidence, we must determine if the evidence meets such a standard.

> In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt

> may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*State v. Barnes*, 334 N.C. 67, 75-76, 430 S.E.2d 914, 918-19 (1993) (cleaned up). In the case *sub judice,* the charges at issue are possession of drug paraphernalia and possession with intent to sell and deliver.

Under N.C. Gen. Stat. § 90-113.22, "[i]t is unlawful for any person to knowingly use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, package, repackage, store, contain, or conceal a controlled substance. . . ." N.C. Gen. Stat. § 90-113.22 (2023). Drug paraphernalia is defined as "all equipment, products and materials of any kind that are used to facilitate, or intended or designed to facilitate, violations of the Controlled Substances Act[.]" N.C. Gen. Stat. § 90-113.21 (2023). In this case the State alleged drug paraphernalia included razor blades, baggies, and the scale.

To prevail on a motion to dismiss for a charge of possession with intent to sell or deliver a controlled substance, the State must present substantial evidence of (1) possession, (2) of a controlled substance, (3) with intent to sell or deliver that substance. *State v. Burleson*, 291 N.C. App. 83, 90, 893 S.E.2d 264, 269 (2023).

Defendant argues the State failed to present substantial evidence of *possession* of paraphernalia or drugs and *intent* to sell or deliver.

**1. Possession**

"Possession may be either actual or constructive." *State v. Burnette*, 158 N.C. App. 716, 721, 582 S.E.2d 339, 343 (2003).

> A person has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use. Constructive possession, on the other hand, exists when the defendant, while not having actual possession, has the intent and capability to maintain control and dominion over the [substance]. When the defendant does not have exclusive possession of the location where the drugs were found, the State must make a showing of other incriminating circumstances in order to establish constructive possession. Constructive possession depends on the totality of the circumstances in each case. No single factor controls, but ordinarily the question will be for the jury.

*State v. Hooks*, 243 N.C. App. 435, 444, 777 S.E.2d 133, 140 (2015) (cleaned up). Here, Defendant was at all relevant times the driver of the red Cadillac and he never denied ownership. Defendant made a phone call from the jail discussing the pit maneuver used on his Cadillac and how "dope flew everywhere." Additionally, the crack cocaine found in Defendant's pocket was consistent with the substance found in the vehicle's floorboards and in the bags found outside the car. The windows and sunroof of the Cadillac were open during the pit maneuver and Defendant noted that items inside the car were flying around consistent with the bags being found within fifteen feet of the vehicle. In the light most favorable to the State and giving the State the benefit of all reasonable inferences, it is reasonable to conclude that the items had been

ejected from Defendant's car during the stop and, consequently, from his possession.

**2. Intent**

> In cases which focus on the sufficiency of the evidence of a defendant's intent to sell or deliver a controlled substance, direct evidence may be used to prove intent, but appellate courts must often consider circumstantial evidence from which the defendant's intent may be inferred. Such an inference can arise from various relevant factual circumstances, including (1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity [of the controlled substance] found, and (4) the presence of cash or drug paraphernalia. An example of drug paraphernalia which appellate courts such as ours have considered in determining intent to sell or deliver controlled substances is the presence of packaging materials, such as plastic baggies, which may be used to package individual doses of a controlled substance.

*State v. Blagg,* 377 N.C. 482, 490, 858 S.E.2d 268, 274 (2021) (cleaned up). In the case *sub judice,* investigators found almost 8 grams of drug substances, a digital scale, a razor, small baggies, and three cell phones. These items clearly support a reasonable inference of intent sufficient to withstand a motion to dismiss.

The trial court did not err by denying Defendant's motion to dismiss the charges for possession of drug paraphernalia and possession with intent to sell and deliver for insufficiency of the evidence.

**B. Interrogation Video**

Next, Defendant contends the trial court erred by admitting into evidence Exhibit 10, a video of Defendant's interrogation which included audio. Detective

Naves is heard telling Defendant that the authorities had been watching him, he'd been involved in other crimes, and he did not believe the things Defendant was telling him. Defense counsel did not object to the admittance of Exhibit 10 at trial.

Defendant now contends he is entitled to relief under the plain error standard as "the plain error standard of review applies on appeal to unpreserved instructional or evidentiary error." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). While evidence is generally reviewed for plain error when a defendant fails to preserve the issue at trial, Defendant forfeits plain error review when, as here, the error is invited. North Carolina General Statutes section 15A-1443(c) states "[a] defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A–1443(c) (2023). "Thus, a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001), *rev. denied*, 355 N.C. 216, 560 S.E.2d 141 (2002). In *State v. Barber,* the defendant did not object to the submission of evidence to the jury after the trial court's warning that not all the defendants' statements were redacted, thereby waiving her right to appellate review and resulting in the issue being overruled on appeal. *Id*.

Here, the State provided Defendant with stipulations that specified the portions of the interview video to be muted. Defendant's counsel signed the stipulations. The trial court asked defense counsel how she would like the jury to be

instructed about the muted sections and then engaged Defendant directly,

> THE COURT: And, [Defendant], have you had a chance to go over these two stipulations with your counsel?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And one of them is stipulation to mute prejudicial portions of body-worn camera, and one of them is stipulation to element of flee to allude, that your driver's license [was] revoked on August 30, 2022.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you consent to both of these stipulations at this time?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you have any questions about them?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you wish to talk to your attorney further about that?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Thank you.

Defendant clearly stipulated to the admission of the video pursuant to the stipulations. At the time the video was admitted into evidence Defendant's counsel stated, "Your Honor, no objection with the redactions that she and I have agreed to." The trial court asked if Defendant was requesting the instruction and Defense counsel affirmed that they were. The trial court then gave the instruction Defendant had requested. Thus, if the admission of the video into evidence was error, it was

invited error under the guidance of counsel; therefore, Defendant has waived the right to appeal this issue. This argument is overruled.

## C. Ineffective Assistance of Counsel

Finally, Defendant contends he was deprived of his right to effective assistance of counsel when his attorney (1) engaged in a cross-examination that authenticated incriminating evidence that had been previously excluded, and (2) failed to object to highly prejudicial video, instead advising him to stipulate to the video's inclusion thereby preventing him from appealing the issue. We agree.

We review whether a defendant received ineffective assistance of counsel under a *de novo* standard. *State v. Wilson*, 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014).

> The Appellate Rules generally require that parties take some action to preserve an issue for appeal. Exceptions exist, however, allowing a party to raise an issue on appeal that was not first presented to the trial court. Among these exceptions is a claim for ineffective assistance of counsel, allowing a party to assert this type of claim for the first time on appeal. Generally, a claim of ineffective assistance of counsel should be considered through a motion for appropriate relief before the trial court in post-conviction proceedings and not on direct appeal. When this Court reviews this type of claim on direct appeal, the claim will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.

*State v. Reber*, 296 N.C. App. 114, 118, 908 S.E.2d 410, 415 (2024) *rev. denied* __ N.C. __, 918 S.E.2d 644 (2025) (cleaned up). To prevail on a claim of ineffective assistance

of counsel, two prongs must be met. First, the defendant must show that the counsel's representation was deficient. Second, the defendant must show that the deficient performance prejudiced his case. "In order to establish prejudice, [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Moses*, 205 N.C. App. 629, 636, 698 S.E.2d 688, 694 (2010) (cleaned up). Similarly, this Court has held that "a claim of ineffective assistance of counsel requires a showing that the [ ] representation did not fall 'within the range of competence demanded of attorneys in [ ] cases.'" *State v. Baskins*, 260 N.C. App. 589, 600, 818 S.E.2d 381, 391 (2018), *rev. denied*, 372 N.C. 102, 824 S.E.2d 409 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2070, 80 L. Ed. 2d 674, 693 (1984)). This Court recognized the holding from the U.S. Supreme Court which held there is a presumption "that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674, 694 (1984) (cleaned up). However, this presumption can be overcome when the defendant is able to prove that an attorney was "objectively unreasonable" in their representation. *Baskins*, 260 N.C. App. at 600, 818 S.E.2d at 391.

In the case *sub judice,* Defense counsel acknowledged that the jail phone calls were "spectacularly prejudicial" and clearly provided significant and necessary

support in the State's case. There was absolutely nothing in the phone calls that would support Defendant's case and having those calls excluded by the trial court was a significant victory for Defendant. There is no reasonable strategic reason for the defense attorney to then proceed to question the detective about the phone calls after she had just successfully suppressed the calls. The State contends that the defense attorney did not expect the detective to change his testimony from *voir dire* and that the defense attorney was attempting to discredit the detective. It may be true that the defense attorney did not expect the change, however, there was nothing to be gained by risking the door being opened to seriously detrimental evidence. The defense attorney conducted significant and thorough cross and recross examinations of the detective. In attempting to discredit him she was free to press on the fact that he failed to turn on his body camera, collected key evidence without taking pictures, and collected no fingerprint or DNA evidence. All these failures could be raised to discredit the detective. Choosing, mere minutes after her objection to the evidence at issue was sustained for lack of foundation, to ask the witness, "And let me just ask you, are you able to say you recognize the voice on that phone call?" was completely unreasonable, had no strategic value, and opened the door for serious detrimental impact to Defendant's case.

The phone calls at issue were particularly important to the State to prove Defendant's possession of the drugs and drug paraphernalia. Without the statements Defendant made concerning how "dope flew everywhere" and how the items in the

bag belonged to "Ant," there was little evidence tying Defendant to the bags. No witness saw the bags which were located within fifteen feet of the vehicle either inside the vehicle or leave the vehicle, no pictures were taken of the bags before they were collected, and no fingerprint or DNA analysis was completed on the evidence. No evidence, statements, or witness testimony could tie the bags to Defendant. "As a general rule, mere proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances, to convict for possession." *State v. Ferguson*, 204 N.C. App. 451, 459–60, 694 S.E.2d 470, 477 (2010) (cleaned up). Therefore, without the incriminating statements from the jail phone calls, the State would have had little to no evidence of possession with the intent to sell or possession of paraphernalia. Defendant's contention that his attorney's ineffectiveness prejudiced his defense is well supported.

Similarly, defense counsel did not object to the video evidence in which the detective repeatedly told Defendant that he was being watched by police, that his name had come up in other crimes, and that he was clearly lying. A police officers' comments on a defendant's credibility and his opinion of a defendant's guilt are impermissible. "The jury is charged with drawing its own conclusions from the evidence, and without being influenced by the conclusion of [the police officer]." *State v. White*, 154 N.C. App. 598, 605, 572 S.E.2d 825, 831 (2002). "[W]hen police officers testify as lay witnesses, they are not permitted to invade the province of the jury by commenting on the credibility of the defendant." *State v. Houser*, 239 N.C. App. 410,

415, 768 S.E.2d 626, 631 (2015). Not only did the defense attorney not object to these videos which would have allowed an evidentiary ruling by the trial court that could have been preserved for appeal, she advised her client to stipulate to the videos which, as noted above, waived her client's ability to appeal the issue due to the invited error.

Had the suppressed jail phone calls not been brought in by defense counsel's errors, there was little to no evidence of possession of the bag and the items in it by Defendant. Additionally, had the jurors not seen the highly prejudicial video in which the primary detective made significant and repeated influential conclusions about Defendant's guilt, the jury's determination about possession would foreseeably have been different. Taken together, we conclude not only is "there is a reasonable probability that . . . the result of the proceeding would have been different[,]" *Moses*, 205 N.C. App. at 636, 698 S.E.2d at 694, but for counsel's errors the results "almost certainly" would have been different, *State v. Reber*, 386 N.C. 153, 159, 900 S.E.2d 781, 787 (2024). Therefore, we hold Defendant received ineffective assistance of counsel and remand for a new trial.

## III.  Conclusion

For the foregoing reasons, we conclude the trial court did not err in denying the motion to dismiss and Defendant waived his right to appeal the admission of video evidence based on defense counsel's invited error. However, his defense attorney's representation did not fall within the range of competence demanded of attorneys and Defendant's case was prejudiced by the deficient representation. Thus, Defendant

received ineffective assistance of counsel. Consequently, we vacate the judgments and remand for a new trial.

VACATED AND REMANDED FOR NEW TRIAL.

Judge HAMPSON concurs.

Judge GRIFFIN concurs in part, dissents in part by separate opinion.

Report per Rule 30(e).

No. COA24-1112 – *State v. Mashore*

GRIFFIN, Judge, concurring in part and dissenting in part.

I concur the trial court did not err in denying the motion to dismiss and Defendant waived his right to appeal the admission of video evidence based on defense counsel's invited error. However, I disagree with the majority's holding Defendant received ineffective assistance of counsel. I would not hold there to be ineffective assistance of counsel based on the cold record here; rather, I would dismiss Defendant's ineffective assistance of counsel claim without prejudice to file in the trial court. Therefore, I respectfully dissent from the majority decision to vacate the judgments and remand for a new trial.